UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS EGAN, as Parent and Natural Guardian of SCOTT EGAN, an Infant Under 17 Years of Age,

Plaintiff,

- *against* -

ARTHUR CLARK,

Defendant.

**03 Civ. 77185 (LMS)**

**DECISION AND ORDER**

This matter is before me for all purposes including trial on consent of the parties in accordance with the provisions of 28 U.S.C. 636(c). Dennis Egan ("Dennis"), on behalf of his infant son Scott Egan ("Scott") ("Plaintiff" will refer to Dennis in his capacity as Parent and Natural Guardian of Scott) brings this negligence action against Defendant Arthur Clark ("Defendant") for injuries Scott sustained during a game of whiffle ball played on Defendant's property on June 5, 1998.[1] At the time, Scott was ten years old[2] and had played Little League baseball since he was approximately eight years old. Scott, who was pitching, was injured by the Defendant, who was batting, when the aluminum bat Defendant was playing with accidentally flew out of his hands, hitting Scott in the face. Defendant moves for summary

[1]Plaintiff filed his Affirmation in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") under a new caption, adding himself as an individual Plaintiff, and Linda Clark as a Defendant. Plaintiff filed his opposing papers under this new caption without filing an amended complaint, and without leave of Court. Plaintiff's "amended" caption in no way complies with Rule 15 of the Federal Rules of Procedure and thus has no effect on these proceedings. See FED. R. CIV. P. 15. Thus, Dennis Egan as an individual plaintiff and Linda Clark as a defendant are not parties to this action, and the Court will give no consideration to them as such in this Decision and Order.

[2]Scott was born on May 11, 1988. Defendant's Affirmation in Support of His Motion for Summary Judgment ("Defendant's Affirmation"), Exhibit D at 8.

judgment pursuant to Federal Rule of Civil Procedure 56, arguing that as a matter of law, a bat accidentally thrown by a batter is a risk inherent in playing ball, and that Scott assumed this risk by voluntarily participating in the game. Defendant therefore contends that he is relieved of any duty he may have owed toward Scott, and that all claims against him should accordingly be dismissed as a matter of law. For the reasons set forth below, the Defendants' Motion for Summary Judgment is denied.

## I. BACKGROUND

On or about June 5, 1998, at approximately 8:20 p.m., Scott, who was best friends with Defendant's son Al Clark ("Al") (Defendant's Affirmation, Exhibit F at 8), was present at Defendant's house located at 196 Westchester Avenue, Pound Ridge, New York (the "Premises"). Complaint at ¶¶ 5, 6. While at the Premises, Scott played an informal game of wiffle ball, in which Defendant participated along with his son Al, and his daughter Jeanine.[3] Complaint at ¶ 7; Defendant's Affirmation, Exhibit F at16 and Exhibit D at 14. They were playing by "regular baseball rules," but using ghost runners since there were only four players. Id., Exhibit F at 18. They were also using a regular aluminum bat, as opposed to a wiffle bat, and a baseball-sized wiffle ball. Id., Exhbit F at 21, 28.

At the time of the accident, Scott had played wiffle ball approximately ten times before,

[3]Both Dennis and Scott testified in their depositions that Dennis did not participate in the wiffle ball game, and that the accident occurred within five minutes of Dennis arriving to pick up Scott. Defendant's Affirmation, Exhibit D at 14; and Exhibit F at 16. Defendant's deposition is to the contrary, as Defendant not only stated that Dennis was a participant, but that Dennis was already at the Premises when Defendant arrived. Id. at Exhibit E, page 15. Defendant also testified that his daughter Jeannine did not participate (Id.), while both Scott and Dennis testified that she did. Id., Exhibit D at 14 and Exhibit F at 16. However, this apparent factual dispute has no bearing on my decision.

but only with a plastic bat. Defendant's Affirmation, Exhibit F at 23. The date of the accident was the first time Scott played wiffle ball with an aluminum bat. Id. Defendant testified in his deposition that he owned a plastic bat normally used in playing wiffle ball, but he did not know why the aluminum bat was used instead on the night in question. Id., Exhibit E at 31.

Before the accident occurred, the wiffle ball game had been going on for approximately one hour, and more than one inning had been completed. Defendant's Affirmation, Exhibit F at 17, 20. It was starting to get dark, and the game was "wrapping up." Id., Exhibit D at 16, 20. During the game, Scott had approximately ten to fifteen turns at bat, and he had thrown over thirty pitches to Defendant. Id. at 20, 26. When the accident happened, Scott was pitching overhand to Defendant, who was at bat about twenty feet away from Scott. Id., Exhibit D at 20. As Defendant swung at a pitch, he lost his grip on the aluminum bat, and it struck Scott in the face. Id. Scott fell to the ground, and his father Dennis ran to assist him. Id at 25. Dennis asked Defendant for a towel for Scott's bleeding eye, and he asked Defendant to call 911 for an ambulance. Id. at 26.

Scott was taken by ambulance to the Northern Westchester Hospital Center where he was treated for his injuries, including a "fractured orbital," for which he received thirty to forty stitches. Defendant's Affirmation, Exhibit D at 28-29. After Scott was treated and released from the hospital, it was recommended that he make follow-up appointments with a pediatric neurosurgeon, an ophthalmologist, and a plastic surgeon. Id., Exhibit D at 30-31. A plastic surgeon diagnosed that Scott's orbital fracture would likely heal due to his young age. Id. at 38. However, Scott continued to have problems with headaches for about a year and a half, and also had trouble focusing in school after the accident. Id. at 40; Defendant's Affirmation, Exhibit F

at 58. At the time of Scott's deposition, he intermittently suffered from headaches and still had a noticeable scar. Defendant's Affirmation, Exhibit F at 52, 59.

## II. DISCUSSION

### A. The Standard for Dismissal Pursuant to Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56")

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). "Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56. Under Local Rule 56.1(b), "the papers opposing a motion for summary judgment shall

include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). In addition, "[e]ach statement *by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement* of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Local Civil Rule 56.1(d) (italics in original).

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

On April 11, 2005, Defendant filed a Local Civil Rule 56.1 Affirmation ("Rule 56.1(a) Statement") asserting that there is no genuine issue to be tried with respect to the following material facts:[4] (1) On June 5, 1998, Scott went to the Premises to visit Defendant's son Al; (2) While at the Premises, Scott participated in a game of wiffle ball; (3) Scott was injured during the wiffle ball game; (4) Scott's accident occurred in the third or fourth inning of the ball game; (5) Scott's accident occurred approximately one hour after the ball game started; (6) Before the accident occurred, Scott batted approximately ten to fifteen times; (7) The wiffle ball game was played with a wiffle ball and an aluminum bat; (8) Scott was pitching the ball to Defendant when the accident happened; (9) Defendant swung at one of Scott's pitches, and the bat came out of Defendant's hands; (10) When the bat came out of Defendant's hands, it struck Scott in the face, causing him to be injured; (10) Scott had played Little League for at least two years prior to the accident.[5]

---

[4]Defendant's Rule 56.1(a) Statement was not "annexed" to his Notice of Motion for Summary Judgment as required by Local Civil Rule 56.1(a), and was only filed separately on April 11, 2005, at the prompting of the Court.

[5]Both Plaintiff and Defendant vaguely cite that this statement is "based on deposition testimony." Defendant's Rule 56.1(a) Statement at ¶ 10; Plaintiff's Amended Counter Statement of Facts ("Rule 56.1(b) Statement") at ¶ 12. However, none of the depositions cited to in the record contain any information regarding Scott's prior Little League experience. See Defendant's Affirmation at Exhibits D, E, and F. There are several pages missing from the deposition transcripts (pages 55, 58, and 61-65 are missing from Dennis Egan's deposition transcript found in Defendant's Affirmation at Exhibit D; and pages 14 and 22-24 are missing from Defendant's deposition transcript found in Defendant's Affirmation at Exhibit E), but there is no indication why these pages are missing, or if they would have made reference to Scott's prior Little League experience.

Defendant also makes reference to Scott's prior Little League experience in his Reply, where he contends that Scott played Little League for three years. Defendant's Reply at ¶ 8. Defendant bases this statement on information supposedly contained in the Affidavit of Dennis Egan ("Egan.Aff."). Id. However, Dennis's Affidavit makes no reference to Scott's Little League experience, only that he and Defendant coached Little League for approximately three

On April 19. 2005, Plaintiff filed his responding Rule 56.1(b) Statement, incorporating all ten statements of material fact that were contained in Defendant's Rule 56.1(a) Statement.[6] See the above paragraph supra. Plaintiff also included two additional material statements of fact that Defendant does not appear to dispute. Plaintiff contends that there is no genuine issue to be tried with respect to: (1 ) Defendant being approximately eighteen to twenty-five feet from Scott when the accident occurred (Plaintiff's Rule 56.1(b) Statement at ¶ 9); and (2) Defendant being approximately forty-five years old, six feet tall, and weighing 220 to 230 pounds at the time of the accident (Plaintiff's Rule 56.1(b) Statement at ¶ 13).[7] Defendant does not dispute either statement, as evidenced in his Affirmation. See Defendant's Affirmation at ¶ 9; Defendant's Reply Affirmation at ¶ 7 (Defendant never disputes that he was physically larger than Scott, only that his age, skill level, and physical size in comparison to Scott did not increase the risk inherent in playing ball).

---

years prior to Scott's accident. Egan.Aff. at ¶ 1. There is absolutely no reference to Scott's prior experience in playing Little League baseball.

Although there is no factual support in the record to conclude that Scott had any prior baseball experience, I will proceed as if Scott had played Little League baseball for two years at the time of the accident as the parties do not dispute the validity of the statement. See Rule 56.1(a) Statement at ¶ 10; Rule 56.1(b) Statement at ¶ 12.

[6]Plaintiff did not file "correspondingly numbered" paragraphs in response to Defendant's Rule 56.1(a) Statement, as required by the Local Rules, but clearly restated Defendant's ten proposed statements of material fact, although in a slightly different order.

[7]Plaintiff failed to provide a citation to the record, but support for this statement can be found in Dennis Egan's Affidavit at ¶ 1.

### B. Assumption of Risk/Duty of Care in Negligence Actions Involving Sports Activities

To succeed in a negligence action, a plaintiff must establish a duty of care owed to him or her by the defendant, and that the defendant breached that duty. Turcotte v. Fell, 68 N.Y.2d 432, 437 (1986). As a general rule, a plaintiff who is a voluntary participant in a sports activity, the duty of care owed to the plaintiff is a duty to exercise care to make the conditions as safe as they appear to be. Id. at 439. If a plaintiff fully comprehends the risks involved in a sport, or the risks are obvious to that plaintiff, then he or she has consented to such risks, and the defendant has fully performed its duty of reasonable care. Id. at 439. "As a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation." Id. (citing Maddox v. City of New York, 66 N.Y.2d 270, 277-278 (1986)).

However, even in vigorous, competitive sports the courts have recognized that some " 'of the restraints of civilization must accompany every athlete onto the playing field.' " Turcotte, 68 N.Y.2d at 439 (citation omitted). Therefore, plaintiffs do not assume the risk, or consent to actions which are "reckless or intentional." Id. (citations omitted). A participant also does not assume risks that are "unreasonably increased." See Mauner v. Feinstein, 213 A.D.2d 383 (2d Dept. 1995) (citing Benitez v. New York City Bd. of Educ., 73 N.Y.2d 650, 657).

The doctrine of assumption of the risk requires "not only knowledge of the injury-causing defect but also appreciation of the resultant risk." Maddox, 66 N.Y.2d at 279. In assessing whether a participant in a sports activity was aware of the risk, courts must consider the skill level and experience of the individual plaintiff. The standard to be applied is a subjective one, based on what a particular plaintiff under the circumstances is able to understand and appreciate about

the risks in the activity at issue. Traub, 1998 WL 187401, at *4 (" 'Moreover, [a] reasonable person of participatory age or experience must be expected to know that there is a risk' in certain activities.").

Although a higher degree of awareness is obviously applied to a professional athlete, amateur athletes, and even children have been found to assume the risk of certain activities. Id. (citations omitted); see also Griffin v. Lardo, 247 A.D.2d 825, 826 (4th Dept. 1998) (despite her young age and inexperience, infant plaintiff assumed the risk by voluntarily playing golf with defendant, as risk of injury was obvious); Cardoza v. Village of Freeport, 205 A.D.2d 571 (2d Dept. 1994) (plaintiff who voluntarily participated in school ice skating outing assumed the risk when another ice skater ran over plaintiff's fingers, as risk was "perfectly obvious"); compare Steegmuller v. Siegal, 202 A.D.2d 855, 856 (3d Dept. 1994) (adult plaintiff who was a "neophyte" to baseball, was held to have assumed the risk of the possibility of being struck by a batted ball, as the risk was obvious even to a beginner).

However, there are certain risks that a child cannot be expected to perceive. See Trainer v. Camp Hadar Hatorah, 297 A.D.2d 731, 732 (2d Dept. 2002) (although the assumption of the risk doctrine has been applied to children in certain circumstances, the court held that defendants failed to present proof that the 7-year-old plaintiff appreciated the risks involved in playing on a swing set); Taylor v. Massapequa Int'l Little League, 261 A.D.2d 396, 397 (10-year-old plaintiff did not, as a matter of law, assume the risks involved in sliding into third base during a baseball game, an activity he claimed he had never done, although he had two years of baseball experience). The determination of whether a plaintiff was able to appreciate the risks involved in a certain activity or not is generally a question of fact for the jury. Maddox, 66 N.Y.2d at 279

(citations omitted). Dismissal of a complaint as a matter of law is only warranted when the evidence submitted by the parties clearly contains no remaining issues to be decided by the trier of fact. Id.

**C. Defendant's Prima Facie Case for Summary Judgment**

The Defendant correctly argues that the risk of a bat slipping out of a player's hands and hitting someone in the head is a risk inherent in playing ball. See Muniz v. Warwick School District, 293 A.D.2d 724 (2d Dept. 2002) (being struck in the head by a bat is inherent in the sport of softball) (citing Morgan v. State of New York, 90 N.Y.2d 471 (1997); Checchi v. Socorro, 169 A.D.2d 807 (2d Dept. 1991) (danger of bat slipping out of player's hands is common in game of stickball); Marlowe v. Rush-Henrietta Cent. School District, 167 A.D.2d 820 (4th Dept. 1990) (plaintiff assumed risk that bat might be thrown accidentally where there was no evidence that defendant's conduct was intentional or reckless) (*affd*. 78 N.Y.2d 1096 (1991)). Defendant showed that Scott, who had played Little League baseball for two years at the time of the accident, was voluntarily participating in the wiffle ball game, and that prior to the accident he had pitched for three or four innings and had ten to fifteen turns at bat. The foregoing is sufficient evidence to show that Scott was able to appreciate the risks involved in wiffle ball, and that he voluntarily consented to them. See Muniz, 293 A.D.2d at 724 (defendant made out prima facie case for summary judgment where infant plaintiff, while voluntarily participating in a softball game during gym class, was struck in the head with a bat released by another player). Thus, I find that Defendant has made out a prima facie case for summary judgment based on assumption of the risk.

**D. Plaintiff's Opposition to Defendant's Motion for Summary Judgment**

Once a defendant establishes a prima facie case for assumption of the risk, in opposition, the plaintiff must raise a triable issue of fact that the defendant either acted recklessly or intentionally, or that the defendant's conduct "created a dangerous condition over and above the usual dangers inherent in the game." Lumley v. Motts, 1 A.D.3d 573, 574 (2d Dept. 2003) (citations omitted); see also Muniz, 293 A.D.2d at 724.

In the instant case, neither party alleges that Defendant intentionally or recklessly released the bat, causing Scott to be seriously injured. In addition, the record, as well as the parties' submissions, do not show that Defendant acted recklessly or intentionally, and only support the conclusion that his action in releasing the bat was accidental. I therefore find that Defendant's conduct was in no way reckless or intentional, and that Plaintiff has failed to overcome Defendant's Motion for Summary Judgment on this ground.

However, Plaintiff raises an issue of fact as to whether Defendant's conduct unreasonably increased the risks inherent in playing wiffle ball. Plaintiff, in opposition to Defendant's Motion, argues that Scott was only ten years old and lacked the experience to appreciate the risks associated with "pitching a wiffle ball to an adult using a metal bat at a close range." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 3. In support of his argument, Plaintiff cites to two New York cases that held that the participation of physically larger and more skill adults unreasonably increased the risk of injury for an infant plaintiff. See Karr v. Brant Lake Camp, 261 A.D.2d 342, 343 (1st Dept. 1999) (adult who threw a baseball "hard" at infant plaintiff raised an issue of fact as to whether the adult's participation in the game unreasonably enhanced the risk of injury to the plaintiff); Mauner v. Feinstein, 213 A.D.2d 383 (2d Dept. 1995) (active participation of an adult in a rugby

game presented an issue of fact as to the adult's participation creating an unreasonably increased risk to infant plaintiff, "considering that rugby, unlike many other sports, is a sport in which heightened and forceful physical contact is extreme, inevitable, and wholly contemplated.").

Defendant argues that Plaintiff failed to present evidence that Defendant's participation in the wiffle ball game and use of an aluminum bat unreasonably increased the risk of injury. Specifically, Defendant argues that "the bat could have been accidentally let go of[] by another infant-plaintiff. . . ." Defendant's Reply Affirmation at ¶ 7. Defendant further argues that Plaintiff had "ample experience" playing baseball and therefore could appreciate the risks involved in playing wiffle ball, including playing with a metal bat. Id. at ¶ 9. Defendant also attempts to distinguish Karr and Mauner from the facts of the present case. Id. at ¶¶ 5 and 6. Defendant first contends that Karr is different from the instant case because the increased strength of the adult counselor in Karr was "clearly" at issue because it impacted how fast the adult counselor was able to throw the ball. Id. at ¶ 5. Defendant argues that Mauner, which involved the contact sport of rugby, differs significantly from the case at bar, which involves the non-contact sport of wiffle ball. Id. at ¶ 6. Defendant argues that Karr and Mauner do not bear on the facts of the instant case because Defendant's physical size and greater strength is not clearly at issue because a child could have caused the same injury from accidentally releasing a bat, and wiffle ball is not a sport where physical contact is inevitable. Id. at ¶ 7.

Construing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, I find that Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether Defendant's conduct unreasonably increased the risk of injury inherent in playing wiffle ball. Even Plaintiff does not say with certainly that

Defendant's participation as a much larger and stronger adult had no effect on the risks normally associated with the game, stating that Scott "most likely" would have sustained injury "regardless of whose hands [the bat] accidentally slipped out of." Defendant's Reply Affirmation at ¶ 5. As stated supra in this Decision and Order, active adult participation in sports played by children has been held to increase the normal risks of injuries in certain athletic activities. See Karr, 261 A.D.2d at 343; Mauner, 213 A.D.2d at 383; supra at 11.

I therefore cannot conclude that as a matter of law, Defendant, who was over six feet tall and weighed well over 200 pounds at the time of the accident, did not increase the force with which the bat struck Scott, and the distance over which the bat traveled after it was released. In addition, I cannot conclude as a matter of law that playing the game of wiffle ball with a metal bat, instead of the plastic bat that is customarily used, also did not unreasonably increase Scott's risk of injury when he consented to play wiffle ball on the Premises. In addition to obviously being heavier and more able to cause serious injury, a metal bat is in no way proportional to a plastic, lightweight wiffle ball.

I therefore find that questions of fact remain as to whether Defendant's active participation in the wiffle ball game, and Defendant's use of a metal bat with a disproportionately lighter wiffle ball, unreasonably increased the risk of injury normally associated with the game. The issue should be decided by the trier of fact, and the Defendant's Motion for Summary Judgment is therefore denied on this ground.

**CONCLUSION**

For the reasons set forth above, the Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 is DENIED.

Dated: May 2, 2005
White Plains, New York

**SO ORDERED**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York